<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MANUEL CONCEPCION, | : | Civ. Action No. 20-5133 (RMB) |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN, et al., | : | |
| | : | |
| Respondents. | : | |

**BUMB, Chief United States District Judge**

     This matter has been opened to the Court by Manuel Concepcion's

("petitioner" or "defendant") filing of a habeas petition pursuant to 28 U.S.C. §

2254.  Having reviewed the Petition, Respondent's answer, Petitioner's traverse, and

the record in this matter, the Court denies the Petition for the reasons stated in this

Opinion and denies a certificate of appealability ("COA").

## I.    <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

     Petitioner was acquitted or murder but found guilty of aggravated

manslaughter and two weapons offenses in connection with the stabbing death of

Ignacio Castro ("Castro or "victim").  The Superior Court of New Jersey Appellate

Division provided the following factual background for the crime:

During the early morning hours of July 11, 2011, near Bellevue and Pacific Avenues in Atlantic City, Ignacio Castro met Megan Cassidy, a prostitute, and solicited her services. Cassidy told Castro she charged sixty dollars, and led him to the back of an alley. When Cassidy asked for the money up front, Castro objected and said sixty dollars was too much. Cassidy then demanded twenty dollars from Castro for wasting her time. They argued and Castro threw a $20 bill at Cassidy. After cursing at each other, Castro slapped Cassidy and she continued to yell at him as they left the alleyway.

A man, street-named "Boo," who knew Cassidy, overheard the commotion and asked Cassidy what was happening. Cassidy explained, and Boo asked Castro why he hit Cassidy. A second man, "Papi," walked by and began to speak to Castro in Spanish. As Castro, Boo, and Papi were speaking, Cassidy's ex-boyfriend "Miz" came by. They were soon joined by defendant, Manuel Concepcion.

Cassidy testified that Boo, Miz, and defendant each hit Castro in the chest. Castro began bleeding, and staggered away. Castro had been stabbed with scissors and, when paramedics responded, he was unconscious, not breathing, and without a pulse. Castro never regained consciousness and sustained anoxic brain injury as a result of prolonged lack of oxygen. He was maintained on life support for a few weeks, but was removed on August 3, 2011, and died shortly thereafter.

On September 21, 2011, defendant was indicted on a charge of possession of cocaine, N.J.S.A. 2C:35–10(a)(1).  Defendant was indicted again on February 15, 2012, on charges of first-degree murder, N.J.S.A. 2C:11–3(a)(1), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39–5(d) (2012 indictment). Tried by a jury, defendant was acquitted of murder but convicted of the lesser included offense of aggravated manslaughter and the two weapons offenses. Petitioner subsequently pled guilty to the possession of cocaine charge and was sentenced to an aggregate forty-year custodial sentence, with an eighty-

> five-percent period of parole ineligibility pursuant to the
> No Early Release Act, N.J.S.A. 2C:43-7.2.

*State v. Concepcion*, No. A–3884–13T4, 2015 WL 9694377, at *1 (N.J. Super. App.

Div. Jan. 5, 2016).

On direct appeal, the Appellate Division affirmed petitioner's convictions and

sentence in an unpublished opinion. *See id.* at *4; *see also* ECF No. 6-20, Exhibit 20,

*State v. Concepcion*, No. A-3884-13 (App. Div. Jan. 5, 2016). On May 6, 2016, the

New Jersey Supreme Court denied defendant's petition for certification. ECF No. 6-

21, Exhibit 21, *State v. Concepcion*, 225 N.J. 339 (2016).

On or about June 15, 2016, petitioner filed a pro se petition for postconviction

relief in state court. *See* ECF No. 6-22, Exhibit 22, Petitioner's PCR Brief and

Appendix at 40-44. On or about August 22, 2017, the PCR court denied the petition

without an evidentiary hearing. *See* Exhibit 22 at 69-79, PCR Letter Opinion dated

Aug. 22, 2017, at DA 51-61.

On December 4, 2017, petitioner filed a late notice of appeal.[1] ECF No. 6-23,

Exhibit 23, Notice of Appeal dated Dec. 4, 2017. On November 26, 2018, the

Superior Court Appellate Division affirmed the denial of petitioner's PCR in an

unpublished opinion. ECF No. 6-24, Exhibit 24, *State of New Jersey v. Manuel

Concepcion*, N.J. App. Div. (No. A-1589-17T2) (Nov. 26, 2018). The New Jersey

---

[1] Petitioner also filed a motion to accept the appeal out of time, but the record does
not contain the order granting that motion. The Appellate Division addressed
Petitioner's claims on the merits, and the Court assumes for purposes of this opinion
that the Appellate Division accepted the appeal as within time. The state does not
argue that the petition is untimely, and the Court does not address timeliness.

Supreme Court denied certification.  ECF No. 6-25, Exhibit 25, *State of New Jersey v. Manuel Concepcion*, 238 N.J. 60 (May 14, 2019).

On April 27, 2020, Petitioner filed a counseled habeas petition pursuant to 28 U.S.C. § 2254.[2]  ECF No. 1.  The state filed its answer on June 8, 2020.  ECF No. 6. Petitioner filed his reply brief on July 22, 2020.  ECF No. 7.

## II.   **STANDARD OF REVIEW**

Prior to bringing a federal habeas petition under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust his state remedies.  Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). If a state prisoner's constitutional claim has been barred in the state courts on independent and adequate state law grounds, there has been a procedural default, and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence.  *Coleman v. Thompson*, 501 U.S. 722, 729, 750 (1991).

If a constitutional claim has been exhausted,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[2] The petition is dated March 25, 2020.  *See* ECF No. 1, Petition at 15.  Because the petition is counseled, the court uses the date counsel filed the Petition.

established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Third Circuit directed habeas courts to follow a two-step analysis under §
2254(d)(1).  *See Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020)
(citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en
banc), cert. denied 528 U.S. 824 (1999)).  First, courts should "determine what the
clearly established Supreme Court decisional law was at the time Petitioner's
conviction became final" and "identify whether the Supreme Court has articulated a
rule specific enough to trigger 'contrary to' review." *Id.* at 253 (quoting *Fischetti v.
Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)).  "The 'clearly established Federal law'
provision requires Supreme Court decisions to be viewed through a 'sharply focused
lens.'" *Id.*  Clearly established law "refers to the holdings, as opposed to the dicta, of
[the Supreme Court's] decisions as of the time of the relevant state-court decision."
*Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A decision is "contrary to" a Supreme
Court holding within 28 U.S.C. § 2254(d)(1), only if the state court applies a rule that
"contradicts the governing law set forth in [the Supreme Court's] cases" or if it
"confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405-06.

Second, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." *Rosen*, 972 F.3d at 253 (quoting *Matteo*, 171 F.3d at 888)). Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Rosen*, 972 F.3d at 252 (quoting *Matteo*, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020), or, in other words, whether "every fairminded jurist would disagree" with the state court. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2), faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). "The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a

reasonable factfinder could not have reached the same conclusion." *Rosen*, 972 F.3d at 252 (3d Cir. 2020) (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000)).

"Although state prisoners may sometimes submit new evidence in federal court," the habeas statute, "is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Id.* (quoting Williams, 529 U.S. at 437 (additional citations omitted)). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180-81.

## III.   DISCUSSION

Petitioner's claims for habeas relief allege ineffective assistance of trial and appellate counsel.[3]  These claims are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes. *See Williams v. Taylor*, 529 U.S. 362 (2000); *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). "Under S*trickland*, a defendant who claims ineffective assistance of counsel must prove (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" *Garza v. Idaho*, 139 S. Ct. 738, 744,

---

[3] As discussed below, the Petition raises ineffective assistance claims in Ground One and a due process claim in Ground Two.  Petitioner's counseled brief discusses only the ineffective assistance claims.

(2019) (citations omitted) (quoting *Strickland*, 466 U.S. at 687–88, 692).  With respect to the performance prong, *Strickland* admonishes that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is a petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A reasonable probability means a "'substantial,' not just 'conceivable,' likelihood of a different result." *Shinn*, 141 S.Ct. at 523 (citing *Pinholster*, 563 U.S. at 189).

The United States Supreme Court recently discussed "the special importance of the AEDPA framework in cases involving *Strickland* claims." *Shinn*, 141 S. Ct. at 524.  In *Shinn*, the Supreme Court reiterated that "federal courts may not disturb the judgments of state courts unless 'each ground supporting the state court decision is examined and found to be unreasonable.'" *Id.* at 524 (quoting *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012)).  Thus, the Court explained, "if a fair-minded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'" *Id.*

### a. Failure to Investigate and Call Witnesses (Ground One(a))

In his habeas petition, petitioner asserts that his counsel was ineffective for failing to investigate and obtain statements from several witnesses who could have exculpated him.  Petitioner raised this claim in his PCR, and the Appellate Division summarized the trial evidence relevant to this claim as follows:

> Ignacio Castro met Megan Cassidy, a prostitute, and solicited her services. The two engaged in an argument and Castro slapped Cassidy. An individual known to Cassidy as "Boo" asked her what occurred. Shortly thereafter, Boo and a number of other individuals, including defendant and Michael Jones,[4] approached and confronted Castro. That confrontation turned violent as Cassidy testified that Boo, Jones, and defendant each struck Castro in the chest. Castro began bleeding, staggered away and ultimately died as a result of a stab wound to his chest.

> At the trial of the 2012 indictment, defendant testified but called no other witnesses. He testified that he made money by hustling, dealing drugs and cutting hair. Cassidy gave him the money she earned as a prostitute, and, in return, he provided her with food, shelter and drugs. On the day of the stabbing, defendant testified he saw a commotion on the street, and was told that Castro had not paid Cassidy and had hit her. Defendant admitted that he struck Castro, but denied stabbing him.

> A number of witnesses provided statements inculpating defendant. Three of those witnesses, Cassidy, Jones, and Alexis Campbell, recanted those statements prior to trial.

> Despite Cassidy's and Campbell's recantations, the State played their original, audiotaped statements to the jury. The State also played an audiotaped statement of Willy Henderson, Jr. Jones did not testify at trial.

> In Cassidy's original, taped statement to the police, she said defendant admitted to her that he stabbed Castro with

---

[4] Michael Jones was also known as "Miz"

> scissors, cut his hand and broke the scissors in the process.
> Campbell's taped statement also included an admission by
> defendant that he stabbed a man who was arguing with
> Cassidy over money. Henderson's taped statement
> included a similar admission by defendant and defendant's
> request that Henderson recover the broken scissors from
> the scene.

*Concepcion*, No. A-1589-17T2, 2018 WL 6164806, at *1-2 (App. Div. Nov. 26, 2018).

In addition to his statement, Henderson also testified at trial that Petitioner asked him to retrieve the scissors and that he did so and threw them away. ECF No. 6-19, Exhibit 29, Trial Tr. Dated Sept. 17, 2013, 6T:168-24 to 25; Exhibit 34, transcript of trial, October 1, 2013, 12T:102-20 to 104-3).

Another crucial witness for the state was Christin Wright, who did not recant her prior statement inculpating petitioner. Wright testified at trial that she spoke with Petitioner a few days after the homicide and that Petitioner admitted to stabbing Castro with scissors. *See* ECF No. 6-12, Exhibit 12, Trial Tr. dated Oct. 1, 2013, 12T:18-24 to 19-20.

On or about June 15, 2016, defendant filed a pro se PCR petition, which was supplemented by appointed PCR counsel's brief and two witness statements of Heather Reynolds, dated May 8, 2017, and June 20, 2017. ECF No. 6-22, Exhibit 22, PCR Appendix at DA 41-45. Defendant also submitted to the PCR court the recanted statements from Cassidy, Jones, and Campbell. *See* Exhibit 22 at 66-69, PCR Appendix at DA 48-50.

In her first statement, Heather Reynolds states that she saw petitioner and "Miz" "strike" the victim. Afterwards, she saw petitioner "wa[]ving his hands" and

heard petitioner yell about the victim not paying money.  From her vantage point across the street, Reynolds did not see anything in petitioner's hands or any injuries to petitioner's hands.  Exhibit 22 at 59, Petitioner's Appendix at DA 41-42.  In her second statement, Reynolds stated that Cassidy told Reynolds that police threatened that she would be sent back to prison and told her what to say regarding the altercation.  *See* Exhibit 22 at 60, PCR Appendix at 43-45.

In her letter dated November 1, 2012, Alexis Campbell states that she made an "untrue" statement to detectives during questioning.  Exhibit 22 at 68, Petitioner's PCR Appendix at DA 50. Campbell further states that petitioner "never told [Campbell] anything about killin[g] anyone.  He never once mentioned anything about the situation at all."  *Id.*  Campbell further states that she was afraid during the interrogation and told the detectives what she "felt they wanted to hear in order for them to work with me on my own situation" *Id.*  Campbell also mentions in the letter that she and petitioner shared a child together and were not on good terms at the time she gave the false statement.  *Id.*

The letter from Cassidy is dated October 11, 2012.  Cassidy states that she was "high on illegal drugs" at the time of the altercation and has "no personal knowledge of whether the blow from [petitioner] had anything to do with the victim's death." *See* Exhibit 22 at 66, Petitioner's PCR Appendix at DA 48.  Cassidy also states that petitioner told her he "punched" the victim, and she assumed he caused his death but that petitioner "never told [her] he killed [the victim].  *Id.*

The letter affidavit from Michael Jones ("Miz") is dated July 12, 2012. Exhibit 22 at 67, Petitioner's PCR Appendix at 49.  In the affidavit, Jones states that he "never gave any statement saying that [petitioner] told [Jones] anything dealing with the accused crime on the above date of 7-11-11."  *Id.*

The record also reflects that on January 21, 2013, prior to trial, petitioner's counsel submitted a request for investigation as to Cassidy, Campbell, and Jones based on the recanting statements obtained by petitioner.  *See* Exhibit 22 at 64, Petitioner's PCR Appendix at DA 46.  At trial, Detective Micheletti also testified that the prosecution was unable to locate Jones.  *See* ECF No. 6-34, Exhibit 34, Trial Tr. Dated Sept. 19, 2013, at 8T116:17-117:18.

In his PCR brief, Petitioner also claimed that his trial counsel failed to investigate and obtain favorable statements from Aspen Baker and Edwin Castro, who were present at the scene, but he provided no statements or affidavits from these individuals.  *See* Exhibit 22 at 56, Petitioner's PCR Brief at DA 38.

The PCR court held a non-evidentiary hearing, ECF No. 6-16, Exhibit 16, Hearing Tr. Dated Aug. 15, 2017, and subsequently denied petitioner's PCR petition in a written decision dated August 22, 2017.  *See* Exhibit 22 at 69-79, PCR Letter Opinion dated Aug. 22, 2017, at DA 51-61.  The PCR court determined that petitioner failed to establish prejudice with respect to any of the witnesses[5] and that

---

[5] The PCR court first noted that Petitioner had not submitted affidavits with respect to Edwin Castro or Aspen Baker.  *See id.* Exhibit 22 at 66-67, PCR Opinion at DA 58-59.

Reynold's statements were "inconsequential" due to the overwhelming evidence

from other witnesses:

> During the trial, the State called nine witnesses. Audio taped statements of several witnesses, including Cassidy, were played for the jury. In Cassidy's statement, she told police that the Defendant admitted to her that he stabbed the victim with scissors. Christian Wright testified at trial that she spoke with the Defendant a few days after the homicide and that the Defendant admitted to stabbing the victim with scissors. The State also played the statement of Alexis Campbell, who said that the Defendant admitted that he stabbed the victim in a dispute over money. Another witness, Will Henderson, whose statement was also played at trial, likewise told investigators that the Defendant had stabbed the victim with scissors. Henderson also testified that the Defendant asked him to retrieve the scissors and that he did so and threw them away.
>
> Moreover, the Defendant testified and admitted to striking the victim, but denied stabbing him. The Defendant's trial counsel chose a trial strategy in which he argued that it was someone else involved in the altercation that delivered the fatal stab wound to the victim. The Defendant's trial counsel went as far as suggesting that it was Michael "Miz" Jones who stabbed the victim, insinuating that this was why he was not able to be located before trial. The jury did not believe this, as the jury found the Defendant guilty of the lesser included offense, Aggravated Manslaughter. After considering the quantum and quality of the evidence, the court finds that the overwhelming evidence, comprised of multiple admissions by the Defendant, renders Ms. Reynold's sworn statement inconsequential to the outcome of the trial. *Contra Strickland*, 466 U.S. at 496 ([A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than with overwhelming record support.)

Exhibit 22 at 77-78, PCR Opinion at DA 59-60.

Petitioner appealed the denial of postconviction relief and argued that he was entitled to an evidentiary hearing on this claim.  See Exhibit 22 at 80-82, Notice of Appeal at DA 62-64.  In reviewing this claim, the Appellate Division explained that the PCR court

> concluded that defendant failed to establish that he was prejudiced by trial counsel's alleged failure to investigate and call Reynolds, Cassidy, Jones and Campbell as trial witnesses and, therefore, did not satisfy the second prong of the two-part test for ineffective assistance of counsel detailed in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by [the New Jersey] Supreme Court in *State v. Fritz*, 105 N.J. 42 (1987). Judge Blee determined that as to Carter[6] and Baker, defendant failed to support his petition with a statement or affidavit from either witness or a description of their proposed testimony.

*Concepcion*, 2018 WL 6164806, at *2.

The Appellate Division affirmed the PCR court's denial of PCR and provided an analysis of each witness:

> Applying the *Strickand/Fritz* test to defendant's claim that trial counsel failed to investigate and present witnesses at trial, we agree with the PCR court that defendant failed to establish that it was reasonably probable that but for trial counsel's alleged ineffective representation, there would have been a different outcome at trial. We address each witness separately.
>
> In her May 18, 2017 statement, Reynolds indicated that while standing across the street, she witnessed defendant, Jones, and Cassidy engaged in a verbal dispute with a "Mexican" individual while someone she knew as Castro stood by. She claimed that defendant and Jones attacked the Mexican male "who ... had both of his hands up in a defensive position." She also stated defendant "sw[u]ng upward and str[uck] [the] 'Mexican male' in the upper part

---

[6] This appears to be a typo and should read "Castro"

of his face or chest" at least once. She recounted that defendant then walked toward her, upset, yelling, and "waiving his hands," but Reynolds claimed she did not see anything in his hands. In her June 20, 2017 statement, Reynolds said Cassidy told her "she was threatened by the police," and that the police "told [Cassidy] what to say."

We agree with the PCR court that in light of the overwhelming evidence of defendant's guilt, any failure to call Reynolds as a trial witness did not prejudice defendant. The State called nineteen[7] witness at trial and played multiple audiotapes of witnesses recounting defendant's admissions that he stabbed the victim with scissors. Further, despite denying that he stabbed Castro, defendant admitted at trial that he did in fact strike him. Thus, the PCR court correctly concluded that "the quantum and quality of the evidence" indicative of defendant's guilt was "overwhelming" and rendered Reynolds' statements "inconsequential" to the trial's outcome.

With respect to Cassidy and Campbell, both witnesses testified at trial and were subject to cross-examination where trial counsel elicited the substance of their recantations. Defendant has failed to identify specifically what additional pre-trial investigation counsel should have performed or how it would have affected Cassidy's or Campbell's trial testimony.

As to Jones, the record reflects that trial counsel requested that an investigator locate and interview him before trial. Jones could not be found and the State did not introduce his pre-trial statement. Thus, there is no merit to defendant's claim that trial counsel was ineffective or that defendant was in any way prejudiced by trial counsel's failure to interview or call a witness that counsel was not able to locate and who did not testify at trial.

With respect to Edwin and Baker, defendant failed to submit an affidavit or statement from either witness that described the purported exculpatory information these witnesses possessed. Thus, defendant's claim that trial counsel should have interviewed and called them, or any

_____

[7] This appears to be a typo and should read "nine" witnesses.

other unidentified witness, at trial is nothing more than a "bald assertion[ ]" and insufficient to warrant relief. *See State v. Porter*, 216 N.J. 343, 355 (2013) (quoting *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div. 1999)); *see also* R. 3:22-10(c).

*Concepcion*, 2018 WL 6164806, at *3–4.

The right of an accused to present witnesses in his own defense "is a fundamental element of due process of law." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)); *see also State v. Sanchez*, 143 N.J. 273, 290 (1996) ("few rights are more fundamental that that of an accused – to present witnesses in his own defense") (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)); *State v. Garcia*, 195 N.J. 192, 201-02 (2008).  Both the Sixth Amendment to the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution guarantee the accused the right "to have compulsory process for obtaining witnesses in his favor."  That guarantee provides a criminal defendant with nothing less than "a meaningful opportunity to present a complete defense." *State v. Garron*, 177 N.J. 147, 168 (2003).  With respect to witnesses, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91; *see also Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (finding attorney's decision to not pursue a self-defense claim was unreasonable because attorney failed to investigate witnesses the prosecution told him "were not alibi witness[es]," and thus, the decision was "uninformed").

Here, even assuming petitioner's counsel was deficient for failing to investigate witnesses, petitioner must also show that there is a reasonable probability that the outcome of his trial would have been different had his trial counsel investigated and called any of these additional witnesses to testify.  The Appellate Division did not unreasonably apply *Strickland's* prejudice prong in finding that petitioner did not meet this standard.

The only new witness from whom Petitioner provided a statement is Reynolds.  Reynolds stated that she was standing across the street and saw petitioner and Jones attack a Mexican male but did not see anything in petitioner's hands or injuries to his hands when he was waving them.  Had petitioner located Reynolds and called her to testify, her testimony would not have made a difference in light of the multiple witnesses who gave statements and/or testified that petitioner admitted he stabbed the victim with scissors.  Even assuming there is a basis for admitting Reynolds' statement that Cassidy told Reynolds that she was threatened by police and the police told her what to say, that testimony would have been cumulative of Cassidy's first–hand testimony to the same effect, which the jury did not believe.   To meet *Strickland's* prejudice prong, petitioner must show a "'substantial,' not just 'conceivable,' likelihood of a different result."  *Shinn*, 141 S.Ct. at 523 (citing *Pinholster*, 563 U.S. at 189), and Reynolds' testimony does not clear that high bar.

With respect to Jones, Petitioner has not provided clear and convincing evidence that contradicts the Appellate Division's factual finding that trial counsel sought to locate him, *see* 29 U.S.C. § 2254(e)(1), and, therefore, counsel was not

deficient for failing to investigate Jones or call him to testify at trial. Petitioner also fails to show that he was prejudiced by the failure to locate Jones and call him to testify. Although Jones' denied that he gave a statement to police that inculpated petitioner, Jones' statement inculpating petitioner was not admitted at trial.[8] Moreover, as the PCR court noted, the absence of Jones at trial allowed petitioner to suggest that Jones was the individual who stabbed the victim.

Counsel's alleged failure to investigate Campbell and Cassidy also did not prejudice petitioner at trial because both witnesses testified at trial and defense counsel elicited the substance of their recantations.

Finally, petitioner asserts that his counsel should have located and obtained statements from Edwin Castro and Aspen Baker, but he provides no affidavits from these witnesses about how their testimony would have been helpful to him. Thus, he cannot establish he was prejudiced by his counsel's failure to investigate these individuals.

For these reasons, the Appellate Division did not unreasonably apply *Strickland* or rely on an unreasonable determination of the facts in rejecting petitioner's claims that his counsel provided ineffective assistance when he failed to investigate and obtain statements from witnesses. The Court denies relief on this claim.

---

[8] Jones does not state in his letter for instance, that he stabbed the victim, that a third party stabbed the victim, or that petitioner did not stab the victim.

**b. Failure to Object to Confrontation Clause Violation (Ground 1(b))**

In Ground One of the Petition, petitioner also raises an ineffective assistance claim premised on 1) trial counsel's failure to object to Detective Micheletti's hearsay testimony regarding an admission made by Jones ("Miz"), which violated the Confrontation Clause, and 2) appellate counsel's failure to challenge the trial court's admission of this testimony on direct appeal.

At trial, Detective Micheletti testified that he was the lead detective in the case and interviewed several people, including Michael Jones, who was also known as "Miz." *See* Exhibit 34, Trial Tr. Dated Sept. 19, 2013, at 8T111:3-111:12. Detective Micheletti spoke to Jones on August 12, 2011, at 9am and read him his *Miranda* rights prior to speaking with him. *Id.* at 111:13-112:7. The Detective testified that he read Jones his *Miranda* rights because "based upon the investigation at that point, we had believed that he had punched the victim, which if he had to talk about that, he would be incriminating himself to an assault, so we advised him of his rights." *Id.* at 112:8-112:12.

When the prosecutor asked if Jones had any information about the incident, Micheletti responded, "yes, he did." *Id.* at 114:9-114:11. Without objection from defense counsel, the following exchange occurred between the prosecutor and Detective Micheletti:

> The Prosecutor: During the interview, did Mr. Jones admit to hitting the victim in the face?
> Detective Micheletti: Yes.

The prosecutor next asked Detective Micheletti whether the Detective charged Jones with any crime, and Micheletti responded, "No." *Id.* at 115:20-115:22. The prosecutor asked, "why not", and Micheletti responded that the Atlantic County Prosecutor's Office makes charging decisions, and he was instructed not to charge Jones because "it was a simple assault, a disorderly persons offense[.]" *Id.* at 115:23-116:3. Petitioner's trial counsel also did not object during this portion of the testimony.

In his PCR, petitioner argued that his counsel's failure to object to inadmissible hearsay testimony damaged his defense because Jones admitted that he hit the victim in the head and the fatal stab wound was to the victim's chest. *See* Exhibit 22 at 58, PCR Brief at DA 39. Petitioner further argued that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal. *See id.* The PCR court found that the testimony at issue was inadmissible hearsay, but that counsel was not ineffective for failing to object because the testimony supported petitioner's defense:

> Lastly, the Court finds that the Defendant's arguments regarding trial counsel's failure to object when the prosecutor asked Det. Micheletti whether Michael Jones ever admitted to hitting the victim to be inconsequential. Det. Micheletti answered in the affirmative. While the answer to that question constituted inadmissible hearsay, the Court finds that this information, in fact, strengthened the Defendant's theory—that it was someone else, and possibly Michael Jones, who stabbed the victim.

Exhibit 22 at 78-79, PCR Opinion at DA 60-61. The PCR court did not directly address Petitioner's ineffective assistance of appellate counsel argument.

On appeal, petitioner argued that trial counsel provided ineffective assistance when he failed to object to Micheletti's inadmissible hearsay testimony; however, appellate PCR counsel further argued that the admission of the testimony not only undermined petitioner's defense, but also violated the Confrontation Clause.  *See* Exhibit 22 at 10-14, PCR Appellate Brief at 7-11.  Petitioner's appellate PCR counsel also argued that appellate counsel should have challenged the trial court's admission of the testimony in petitioner's direct appeal.  *See id.* at 11.

The Appellate Division rejected both claims as follows:

> We also agree with the PCR court that trial counsel's failure to object to the admission of Detective Micheletti's hearsay testimony did not affect the trial's outcome. As the PCR court explained, trial counsel "chose a trial strategy in which he argued that it was someone else involved in the altercation that delivered the fatal stab wound to the victim." Judge Blee acknowledged that Detective Micheletti's response was inadmissible hearsay but rather than harm defendant's case, the testimony actually "strengthened the [d]efendant's theory ... that it was someone else, and possibly Michael Jones, who stabbed the victim."
>
> We similarly find no merit to defendant's claim that appellate counsel was ineffective for failing to raise Detective Micheletti's testimony on direct appeal as an appellate counsel is not ineffective for failing to raise every issue imaginable. *State v. Gaither*, 396 N.J. Super. 508, 515 (App. Div. 2007) (citing *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983)). Rather, appellate counsel is afforded the discretion to construct and present what he or she deems are the most effective arguments in support of the client's position. *Id.* at 516. Here, in light of the overwhelming evidence unrelated to Detective Micheletti's testimony establishing defendant's guilt, including [petitioner's] admissions to multiple individuals, appellate counsel's

> representation was not deficient for failing to raise an issue
> that was unlikely to affect the outcome of the appeal.

*Concepcion*, 2018 WL 614806, at \*4.  In his habeas petition, Petitioner argues that the

Appellate Division unreasonably applied *Strickland* in resolving these claims.

The admission of Jones' hearsay statement implicates his Sixth Amendment

right to confrontation.  The Sixth Amendment to the United States Constitution and

Article I, Paragraph 10 of the New Jersey Constitution guarantee a criminal

defendant the right to confront "the witnesses against him." U.S. Const. amend. VI;

N.J. Const. art. I, ¶ 10.  The right of confrontation is an essential attribute of the right

to a fair trial, requiring that a defendant have a "'fair opportunity to defend against

the State's accusations.'"  *State v. Garron*, 177 N.J. 147, 169, 827 A.2d 243, 256

(2003) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)).

"The Confrontation Clause provides two types of protections for a criminal

defendant: the right physically to face those who testify against him, and the right to

conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).  The

constitutionally guaranteed right to cross-examination "is a functional right that

promotes reliability in criminal trials," *Lee v. Illinois*, 476 U.S. 530, 540 (1986), and

"reflects a judgment" that the reliability of a witness's testimony is best determined

by testing in the "crucible of cross-examination," *Crawford v. Washington*, 541 U.S.

36, 61 (2004). A criminal defendant's right to cross-examine the witnesses against

him applies not only to in-court testimony but also to out-of-court statements

introduced at trial. *Crawford*, 541 U.S. at 50-51. Therefore, "a witness whose prior

statement is to be used must not only be produced but must also be sworn and made available for cross-examination." *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3d Cir. 1977); *see also Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 380 (3d Cir. 2018) (explaining same).

In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." [9]  *See also Davis v. Washington*, 547 U.S. 813, 821 (2006).

In prosecutions where there are multiple participants in a crime, the Confrontation Clause's "truth finding function is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination."  *Lee v. Illinois*, 476 U.S. 530, 541 (1986)). Thus, in *Bruton v. United States*, the United States Supreme Court held that a defendant's confrontation right was violated by the admission of his co-defendant's

---

[9] As explained in *Davis v. Washington*, "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  547 U.S. at 821.  In the context of police interrogations, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

incriminatory confession, even if curative jury instructions were later given. 391 U.S. 123, 126, (1968).

In his habeas petition, Petitioner contends that his conviction violates *Douglas v. Alabama*, 380 U.S. 415, 419 (1965) (holding that the statements of a non-testifying co-defendant or accomplice cannot be introduced in trial through the testimony of law enforcement). There the state called as a witness in Douglas' trial for assault a man who had been indicted along with Douglas and found guilty in a separate trial. *Douglas*, 380 U.S. at 416. The witness was concerned that his testimony would negatively impact his own criminal proceedings. *Id.* Although the trial court ruled that the witness did not have a valid claim of Fifth Amendment privilege, the witness refused to answer any questions on direct- or cross-examination. *Id.* The prosecutor was permitted to introduce portions of a written confession previously signed by the witness, which implicated Douglas in the assault. *Id.* at 416-17. The Supreme Court held that Douglas had been denied the "right of cross-examination secured by the Confrontation Clause." *Id.* at 419.

Petitioner's case is not on all fours with the *Douglass* (or the circuit court decisions cited in petitioner's reply brief) because Jones' admission that he hit the victim in the face, standing alone, does not directly implicate petitioner in the crime. Nevertheless, even assuming the admission of Jones' statement violated the Confrontation Clause, Petitioner must also show that the Appellate Division unreasonably applied *Strickland* to warrant habeas relief on this claim.

Here, the Appellate Division did not unreasonably apply *Strickland's* prejudice prong in finding that the improperly admitted statement strengthened the defense theory of the case and had no effect on the trial's outcome.  To meet *Strickland's* prejudice prong, petitioner must show a "'substantial,' not just 'conceivable,' likelihood of a different result."  *Shinn*, 141 S.Ct. at 523 (citing *Pinholster*, 563 U.S. at 189).

It is undeniable that petitioner's counsel pursued a defense strategy suggesting that someone else involved in the altercation stabbed the victim.  With respect to that strategy, Micheletti's testimony that Jones' admitted he hit the victim cuts both ways. On the one hand, the fact that Jones admitted to hitting the victim in the head and was not charged does not align perfectly with the defense's theory that Jones stabbed the victim in the chest.  On the other hand, however, Jones' admission that he assaulted the victim arguably strengthened the defense's theory that Jones may have also fatally stabbed the victim.  Because the police failed to locate or charge Jones, the defense was free to imply that the actual killer was still free.  As such, the Appellate Division did not unreasonably resolve this issue.

Moreover, the evidence at trial included petitioner's admissions to multiple witnesses that he stabbed the victim, as well as testimony that petitioner asked Henderson to retrieve scissors from the scene.  Given this strong evidence of petitioner's guilt, petitioner cannot show a reasonable probability that he was prejudiced by his attorney's failure to object to the admission of Jones' statement and Micheletti's testimony that Jones was not charged.

Petitioner argues that the Appellate Division failed to consider the lack of DNA evidence connecting petitioner to the scissors and the fact that the witnesses were drug addicts, several of whom recanted their earlier statements inculpating petitioner.  Although no DNA evidence definitively connected petitioner to the scissors, Henderson testified that petitioner asked him to retrieve the scissors from the scene.  And although Wright, Cassidy, Campbell, and Henderson all had credibility issues and were not model citizens, the jury had the opportunity to listen to each of them at trial and determine what statements and testimony it found credible.

Petitioner also argues that the Appellate Division failed to consider the prosecutor's use of Jones' admission in his closing.  Petitioner objects to the following portion of the closing:

> I want to start off with going over who didn't stab and kill Ignacio Castro because there seems that – I was talking about Michael Jones.  He's the easy – he's the easy, easy, easy choice here to the point the finger at if you're the defense.
>
> But why didn't Michael Jones do it.  Other than Cassidy's trial testimony – and I'll amend that because we heard from the defendant today – so let's say other than Cassidy's and the defendant's trial testimony, there's no direct evidence that Jones punched Castro in the chest.
>
> You heard from Will Henderson.  He said he didn't recall where he punched him.  You heard from Cassidy and I'm going to – I'd submit I'm going to, you know, go over this later, this difference between her original statement and her trial testimony.  But I'd submit that it's not – the trial testimony she had here a couple of weeks ago, it wasn't the most credible testimony.

I'm going to go over the video [defense counsel] played. I'm going to play it later on. And I submit that the video shows Jones punched or attempted to punch Castro in the head. <u>Jones himself admitted to Detective Matty—Micelet—excuse me Micheletti that he punched Castro in the head.</u>

Megan Cassidy stated right here on the stand that Jones never had scissors on him that night. She stated he had a look of shock on his face when Poppy told her Mr. Castro had been stabbed. If you recall her statement and her testimony; that after this incident they walked around the other way and back up Florida Avenue, her and Michael Jones.

That's when Poppy . . . confronted them and said, yo, man, that guy's – that guy's dead up there on the corner. And if you remember, she stated that Michael Jones had a look of shock on his face when he was told that. I would submit that someone who just knowingly stabbed a person would not have that look of shock on his face.

Michael Jones ran toward the victim after he found out that he had been stabbed. Again, Megan Cassidy testified that when Poppy told him that, he runs toward the victim, toward Florida Avenue. I would submit that a person who just stabbed someone would not go back toward the victim. They would run and hide, as we know defendant did by going one block up to Kathy Campbell's house and staying there.

Who did stab Ignacio Castro? I would say the State (indiscernible) you were here because we believe the defendant did it.

ECF No. 6-25, Exhibit 35, Trial Tr. Dated Oct. 2, 2013, at 13T 115:23-117:23

(emphasis supplied).

Setting aside the fact that petitioner did not challenge the propriety of the prosecutor's closing arguments in state court, petitioner also vastly overstates the damaging effect of Jones' admission, which was briefly reiterated by the prosecutor

in his closing.  The prosecutor's closing testimony about Jones primarily focused on admissible evidence that suggested that Jones did not stab the victim.  For instance, the prosecutor highlighted the video evidence that arguably showed that Jones hit the victim in the head and Cassidy's testimony that Jones returned to the scene upon finding out that the victim had been stabbed and looked "shocked" when he received the news.

For all these reasons, the Appellate Division did not unreasonably apply *Strickland* or unreasonably consider the evidence in resolving petitioner's ineffective assistance of trial counsel claim.

The Appellate Division also did not unreasonably apply *Strickland* when it determined that appellate counsel was not deficient for failing to raise the hearsay or Confrontation Clause issue on direct appeal.  Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel.  *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  It is well-established that an attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). Effective appellate counsel must "select the most promising issues for review," not every possible claim. *Jones*, 463 U.S. at 751-52 (explaining that an experienced advocate will emphasize "the importance of winnowing out weaker arguments on appeal and 'focusing on a few key issues.'"). To overcome the presumption of

effective assistance of counsel, a petitioner must show that counsel ignored issues that are "clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. at 288.

Here, it is well-established that a violation of the Confrontation Clause is subject to harmless error analysis. *See Del v. Van Arsdall*, 475 U.S. 673, 684 (1986). A federal constitutional error is harmless where the court is able to "declare a belief that it was harmless beyond a reasonable doubt." *State v. Castagna*, 187 N.J. 293, 312 (2006) (citing *Chapman v. California*, 386 U.S. 18, 24, (1967)). Whether a constitutional error is harmless in a particular case depends upon a number of factors, including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *See Del v. Van Arsdall*, 475 U.S. at 684.

Here, Micheletti's brief testimony that Jones' admitted to hitting the victim in the head and that Jones was not charged was a very small part of the overall evidence presented by the prosecution that arguably strengthened, rather than weakened, the defense. Moreover, the prosecution's overall case was very strong and included statements and testimony from multiple witnesses who claimed that petitioner admitted to stabbing the victim and asked a witness to retrieve the scissors from the scene. Under these circumstances, a reasonable appellate attorney would have viewed Jones' admission that he hit the victim and Micheletti's statement that Jones was not charged as harmless beyond a reasonable doubt. As such, the

Appellate Division did not unreasonably apply the performance prong of *Strickland* in finding that appellate counsel was not deficient for failing to raise this issue on direct appeal.

For these reasons, the Court denies Ground One(b) of the Petition.

### c. Denial of Due Process – "Knowing use of Perjured Testimony Inspired by Police Officers" (Ground Two)

Finally, Petitioner also raises what appears to be a due process claim premised on the "knowing use of perjured testimony inspired by police officers." ECF No. 1, Petition at 8.  Petitioner claims to have exhausted this claim for relief, *see id.*, but he provides no record support that this claim is exhausted, and his counseled brief does not address this claim.  Although the record reflects that several witnesses recanted their testimony and claimed that police pressured them to provide statements inculpating petitioner, petitioner has provided no evidence that the prosecution knowingly presented perjured statements from any witnesses in this matter.  Because this claim appears unexhausted and unsupported, the Court denies this ground for relief on the merits pursuant to 28 U.S.C. § 2254(b)(2).

### d. Certificate of Appealability

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to determine whether a COA should issue.  Having denied the claims in the Petition, the Court will also deny a COA.  Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas

proceeding unless he has "made a substantial showing of the denial of a constitutional right."  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## IV.    <u>CONCLUSION</u>

For the reasons explained in this Opinion, the Court denies the Petition and denies a COA.  An appropriate Order follows.


Date: April 27, 2023.


<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**CHIEF UNITED STATES DISTRICT JUDGE**